### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 15-23620-CIV-GOODMAN
### [CONSENT CASE]

ELAN INTERNATIONAL, INC.,

     Plaintiff,

v.

SEN COLLECTION, INC.,

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Elan International, Inc. ("Elan") filed an amended complaint [ECF No. 34] and Defendant Sen Collection, Inc. ("Sen") filed a motion to dismiss for lack of personal jurisdiction. [ECF No. 39]. Elan filed an opposition response, Sen filed a reply and Elan filed a sur-reply. [ECF Nos. 42; 43; 46]. The Undersigned ordered Sen to provide an additional factual clarification about the shipping of its products into Florida. [ECF No. 47]. In compliance with this Order, Sen filed: (1) a supplemental affidavit of its owner Trang Phung ("Phung"); (2) communications between Letty Biggins ("Biggins"), a Florida store owner, and Phung; and (3) invoices reflecting Sen's sales, on a wholesale basis, to Florida stores. [ECF Nos. 48-1; 48-2; 48-3].

The Undersigned has reviewed the amended complaint, the parties' filings and the record. For the reasons outlined below, I find that the court *does* have personal jurisdiction over Sen, and, as a result, the Undersigned **denies** Sen's motion to dismiss.

Factual Background and Procedural Posture

Elan is a Florida-based apparel company that uses its federally registered trademark SEN to identify mass-market women's apparel. [ECF No. 34, ¶ 1]. On September 11, 2012, Elan registered its SEN mark with the United States Patent and Trademark Office ("USPTO"). [ECF No. 34, ¶ 7].

Sen is also in the women's apparel business and sells its own brand of clothes ("Sen Couture") out of its California-based retail store. [ECF Nos. 34, ¶ 1; 39, p. 1]. Sen filed an application to register its similar mark on November 11, 2013 and then filed an action before the Trademark Trial and Appeal Board ("TTAB") to cancel Elan's SEN mark. [ECF No. 34, ¶¶ 13-17]. That TTAB action is still pending. [ECF No. 34, ¶ 18].

Elan then filed this action against Sen in the Southern District of Florida, seeking declaratory judgments. [ECF No. 1, pp. 7-10]. Sen moved to dismiss the complaint for lack of personal jurisdiction [ECF No. 12] and Elan moved for leave to file an amended complaint [ECF No. 19]. The Undersigned granted Elan's motion and denied as moot the motion to dismiss. [ECF No. 33].

Elan filed an amended complaint [ECF No. 34], which now includes three counts: (1) for a declaratory judgment that there is no confusion between Elan's SEN mark and

Sen's mark; (2) for trademark infringement; and (3) for false designation of origin. [ECF No. 34, pp. 7-10]. Sen filed a renewed motion to dismiss for lack of personal jurisdiction. [ECF No. 39], which is now ripe for my review.

<u>Legal Standard for Motion to Dismiss for Lack of Personal Jurisdiction</u>

On a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the initial burden of 'alleg[ing] sufficient facts to make out a prima facie case of jurisdiction' over the nonresident defendant." *Keim v. ADF MidAtlantic, LLC,* No. 12-80577-CIV, 2016 WL 4248224, at *2 (S.D. Fla. Aug. 10, 2016) (quoting *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam)).

A *prima facie* case is established if the plaintiff's evidence can withstand a directed verdict motion. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000); *Promex, LLC v. Perez Distrib. Fresno, Inc.,* No. 09-22285-CIV, 2010 WL 3452341, at *2 (S.D. Fla. Sept. 1, 2010). The "district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). If the parties' affidavits can be "harmonized," then the court can make a decision based on the facts before it. *See Venetian Salami Co. v. J.S. Parthenais,* 554 So. 2d 499, 502–03 (Fla. 1989). However, if the affidavits conflict, "the district court must construe all reasonable inferences in favor of the plaintiff." *Madara,* 916 F.2d at 1514 (citations omitted).

3

The analysis of whether personal jurisdiction exists over a non-resident defendant is a two-part determination involving a state long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Posner,* 178 F.3d at 1214; *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626 (11th Cir. 1996).

First, the court must consider whether the forum state's long-arm statute, in this case Florida's long-arm statute, is satisfied. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996). If the requirements of Florida's long-arm statute are met, then the second step is to determine whether there are sufficient minimum contacts to satisfy the Due Process Clause so that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Both must be satisfied before a court may exercise personal jurisdiction over a nonresident defendant. *Robinson,* 74 F.3d at 256 (internal citations omitted).

<u>Allegations as to Jurisdiction in the Amended Complaint</u>

Elan alleges that the court has specific personal jurisdiction[1] over Sen under the "conducting business" prong of Florida's long-arm statute or § 48.193(1)(a)(1) because: "(1) a substantial part of the events or omissions giving rise to Elan's claim occurred in

---

[1]    Personal jurisdiction can arise either specifically or generally. "[S]pecific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006) (internal citation omitted). In contrast, general jurisdiction "arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated." *Id.* Elan does not allege that this Court has general jurisdiction over Sen in the amended complaint.

this District, and (2) Defendant alleges that it engages in business in this state through one or more local distributors or wholesalers." [ECF No. 34, ¶ 4].[2]

Elan *also* alleges that the court has specific personal jurisdiction over Sen under § 48.193(1)(a)(2) because "Defendant committed a tortious act within this state." [ECF No. 34, ¶ 4]. Elan alleges that "Defendant's use of the SEN mark gives rise to a likelihood of confusion" because Sen "sells SEN branded clothing to two third-party companies called Style N Wine and Style So Chic located in Delray Beach, Florida and Palm Beach Gardens, Florida, respectively. Defendant has identified these companies as 'wholesale' purchasers of its SEN branded clothing and has admitted in sworn testimony that Defendant has sold 'a lot more' than a dozen units of Defendant's SEN-branded clothing to Style So Chic in Florida." [ECF No. 34, ¶ 4].

<u>Affidavits, Testimony, and Additional Record Evidence as to Jurisdiction</u>

To support the dismissal motion, Sen attached Phung's initial affidavit, which states that Biggins came into its California store in the Summer of 2011 and purchased apparel which she brought back to Florida. [ECF No. 39-1, ¶ 5]. Biggins owned Style So Chic, a fashion boutique located in Palm Beach Gardens, Florida. [ECF No. 39-1, ¶ 5].

---

[2]     As shown below, since the Undersigned finds that Elan has stated a *prima facie* case for specific jurisdiction under § 48.193(1)(a)(2), the "committing a tortious act within in the state" prong, I do not need to analyze the "conducting business prong." under Florida's long-arm statute. Even if I did, Elan would be unlikely to establish a *prima facie* case under § 48.193(1)(a)(1). Although Elan does not actually concede to an inability to prove the "doing business" type of jurisdiction, it discusses this alternative only briefly -- in an inconspicuous footnote that is devoid of any legal analysis or factual support. [ECF No. 42, p. 2, n. 1].

The affidavit also says that Biggins tried to contact Sen again (to discuss her interest in purchasing wholesale apparel to re-sell from her Florida store) by email on December 17, 2012 but mistakenly sent the email to Elan. [ECF No. 39-1, ¶ 6].

According to Phung's Affidavit, a Delray Beach, Florida-based boutique, Style N Wine, contacted her in early 2013 about its "interest in purchasing wholesale orders from SEN Collection that it could, in turn, sell from its Florida store." [ECF No. 39-1, ¶ 8]. The Affidavit states that these third parties later "contact[ed] SEN COLLECTION in California to make purchases from it in California." [ECF No. 39-1, ¶ 9].

In its response, Elan attached an excerpt from Sen's supplemental interrogatory answers in the TTAB action. In those answers, Sen represented that it has been selling women's apparel since January 1, 2010 from its Los Angeles store, its two websites "and via wholesale" to Style N Wine and Style So Chic.  [ECF No. 42-1, p. 3]. The answers also said that Sen "intends to **continue** wholesaling [its] Goods under [its] Mark to department stores and boutiques." [ECF No. 42-1, p. 3] (emphasis supplied).

In addition, Elan also attached portions of a deposition which Phung provided in the TTAB action. In her deposition, Phung testified that her company sold items to Biggins for "resale." [ECF No. 42-2, p. 5]. Phung further testified that she sold "a lot more" than a dozen units to Style So Chic. [ECF No. 42-2, p. 6].

In its reply, Sen emphasized that there is **no record evidence** that it shipped or sent anything to the two Florida stores [ECF No. 43, pp. 3-5]. Noting that Sen was

technically correct but pointing out that Sen was correct only because it was *silent* on the issue of whether it shipped any merchandise to Florida, the Undersigned required Sen to disclose how the products were shipped.  [ECF No. 47].

Sen's supplemental affidavit (signed by Phung) discloses that it shipped 43 dresses to Florida in 6 separate shipments. [ECF No. 48-1, ¶ 5]. Sen also filed copies of its invoices for only 5 shipments, not 6, concerning only 39 dresses, leaving 4 dresses unaccounted for. [ECF No. 48-3]. Sen's sales for those 39 dresses totaled $6,555 (including shipping costs) and the dresses sold had wholesale prices of $140, $150, $180, $215, and $300. [ECF No. 48-3]. Sen also filed communications demonstrating that these transactions were commercial and that it knew the dresses would be resold in the Florida stores.  [ECF No. 48-2].

Long-Arm Statute: § 48.193(1)(a)(2) "committing a tortious act within [Florida]"

Elan's amended complaint contains Lanham Act claims which constitute "tortious act" allegations within the meaning of Florida's long–arm statute. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (finding that trademark claims are tortious acts for purposes of Florida's long-arm statue).

Even though Sen did not have a physical presence in Florida, jurisdiction under § 48.193(1)(a)(2) may apply when an out-of-state defendant, such as Sen, commits a tort that produces injury in Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *Promex, LLC,* 2010 WL 3452341, at *5.

7

In *Promex*, the defendant sold allegedly infringing dietary supplements either through a website or telephone order, which allegedly created consumer confusion in Florida. 2010 WL 3452341, at *5. The *Promex* Court found that because defendant had sold and shipped allegedly infringing dietary supplements to three Florida-based companies for purposes of re-sale, the "Defendant allegedly committed a tortious act outside the state that causes injury in Florida[.]" *Id*. The *Promex* Court also found that the defendant's shipment of just 12 units to only one Florida-based reseller was "sufficient to assert specific personal jurisdiction over Defendant[.]" *Id*. at *6.

From the amended complaint, Phung's initial affidavit, and discovery from the TTAB proceedings, the following jurisdictional facts are undisputed: (1) Sen sold its allegedly infringing product "via wholesale" to two Florida-based retailers; (2) Sen made such sales to these Florida retailers on multiple occasions since 2012 in quantities in excess of 12 units; (3) Sen knew the allegedly infringing products would be resold at retail stores in Florida to Florida residents; (4) Sen admitted knowing of the existence of Elan in Florida at the time of these sales (by reason of the misdirected email sent by Style So Chic to Elan). [ECF Nos. 34; 39-1; 42-1; 42-2].

What the initial Phung affidavit and the TTAB filings do not address, which Sen focuses on its reply, is that there is *no evidence*, one way or the another, that Sen *shipped* its clothing to Florida.   [ECF No. 43]. In the initial affidavit, Phung purposefully attempts to avoid any specific discussion of shipping in an apparent attempt to

distinguish *Promex* and to support its argument that this Court lacks personal jurisdiction over Sen.

Specifically, Sen argued that in *Promex*, the court's decision to exert personal jurisdiction over the defendant required defendant's activity to be directed to Florida by shipping its products to that state. [ECF No. 43, p. 4 (citing *Promex, LLC*, 2010 WL 3452341 at *5) and noting that the court used its **discretion** to assert personal jurisdiction over a defendant that committed a tortious act out of state because there was proof that the tortious acts were directed to Florida through the proof of shipment].

Sen's supplemental, Court-ordered filings about shipping completely undermine the argument it raised in its reply. The supplemental affidavit and invoices show that Sen itself shipped 43 dresses, with wholesale prices of $140, $150, $180, $215, and $300, to Florida in 6 separate shipments totaling $6,555.[3] [ECF Nos. 48-1, ¶ 5; 48-3]. This amount **substantially exceeds** the proof of the 12 units that were found to be sufficient to establish personal jurisdiction in *Promex*. 2010 WL 3452341, at *6. Although the affidavit explains that Sen shipped the merchandise at its customers' request using their account number, the significant point is that **Sen** was in fact the shipper.

In addition, the email communications demonstrate that these transactions were commercial and that Sen knew the dresses would be resold in Florida stores. For example, a December 3, 2012 email said, "Hello, Letty [Biggins]. I am ready now to

---

[3]     If we use $200 for the average price of the missing 4 dresses that would generate an additional $800 in revenue -- bringing the sales of the 43 dresses to $7,355.

wholesale." [ECF No. 48-2, p. 2]. And a December 6, 2012 email said, "I am in the process of drafting the contract and will send it over soon." [ECF No. 48-2, p. 3].

Had Phung's initial affidavit not been silent on shipping and instead candidly discussed the specific facts revealed in Sen's later, Court-mandated filings, then Sen's involvement in intentionally shipping merchandise to Florida would have been revealed, thereby undermining the motion to dismiss and bolstering Elan's jurisdictional allegations in the amended complaint. Now that the record is more complete, the Undersigned finds that the requirements of Florida's long-arm statute have been met because Sen committed tortious acts in Florida by selling and then shipping, on multiple occasions, the alleging infringing products to Florida and by also knowing that those infringing dresses would be resold to Florida's residents by Florida stores.

Due Process Clause

The Eleventh Circuit has a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. The court must examine "(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal

jurisdiction comports with traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (internal citations and quotations omitted).

The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a "compelling case" against the third prong. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

The first prong requires a "direct causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355-56 (internal citations omitted). Here, Elan's trademark claims arise out of Sen's contacts with Florida businesses. Sen's ties to Florida involve the selling and shipping of the allegedly infringing goods into Florida and accepting payment from Florida clients. Thus, there is a direct causal relationship between Sen, Florida, and Elan's trademark claims.

Purposeful availment, the second prong, is determined by the minimum contacts test, where the court assesses whether the defendant's contacts with the state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357 (internal citation omitted).

Here, Sen's contacts with Style So Chic and Style N Wine are directly connected to Elan's trademark claims. Sen purposely sold 43 allegedly infringing products in 6 shipments, knowing that those products would be resold by the Florida businesses. Sen

communicated to the Florida businesses that it was ready to wholesale the products and Phung testified that she fully intended to continue selling the allegedly infringing products. Even though Sen did not have a Florida office or agent, my view remains unchanged that Sen enjoyed doing business in Florida.

In fact, it is clear that Sen anticipated being haled into a Florida court, because Sen has admitted that it continued selling the products for years after knowing about Elan's trademark and that its customers confused Elan's business for Sen's business. Sen was so seemingly worried that lawsuits would arise between Elan and itself over Elan's mark that Sen brought a TTAB cancellation action against Elan. Based on these circumstances, the Undersigned is not convinced that this Florida-filed lawsuit comes as a surprise to Sen.

The third prong, fair play and substantial justice, is also met. *See Int'l Shoe Co.*, 326 U.S. at 320. In this analysis, we consider: (1) "the burden on the defendant[;]" (2) "the forum's interest in adjudicating the dispute[;]" (3) "the plaintiff's interest in obtaining convenient and effective relief[;]" and (4) "the judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288.

It is true that Sen is a California defendant with only one store in California and that litigating this lawsuit in Florida will come at a greater cost and inconvenience than litigation in California. However, this is always the case for out-of-state defendants, so this factor alone does not result with a fundamental unfairness finding for Sen,

especially in light of the fact that Sen failed to offer any evidence of its "finances or any other limitations [on it] to show that [it] would be burdened by having to litigate the case in Florida." *Louis Vuitton Malletier*, 736 F.3d at 1358.

Florida has a strong interest in hearing the case and protecting consumers from confusion that results from trademark infringement. Elan has an undeniable interest in litigating the case in its chosen forum as its potential witnesses, including Style So Chic and Style N Wine, are located in Florida. Thus, the Court has an interest in efficiently resolving the dispute in the forum where the case has been pending for over two years.

Conclusion

Therefore, Sen's motion to dismiss for lack of jurisdiction is **denied**. Sen shall file an answer to Elan's complaint by February 6, 2017. The Court will also set this case for a telephonic trial scheduling conference through a separate order.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on January 24, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

 **Copies furnished to:**
All counsel of record

13